IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS A. SIMONIAN, <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Defendant. | Civil Action No. 1:10-cv-1306 <br><br> Hon. Samuel Der-Yeghiayan <br><br> DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) |

I.  **INTRODUCTION**

Plaintiff fails to address the central point raised in Cisco's Motion to Dismiss, *i.e.*, that his Complaint fails to allege sufficient facts from which a plausible inference of an intent to deceive can be made. Instead, he repeatedly references the conclusory allegations in the Complaint asserting that Cisco is a "sophisticated company" and that it "knows or should know" the identified product is marked with expired patents. But, these are exactly the type of labels and conclusions that the Supreme Court has recently held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) and *Ashcroft v. Iqbal*, 129 U.S. 1937 (2009) should be afforded no weight when considering the sufficiency of a Complaint. That is particularly true when issues of intent are a requirement of the claim, as they are with Simonian's false marking claim. Before a party is allowed to subject another to discovery concerning claims requiring proof of intent, a court is required to perform its gatekeeper function and insure that sufficient facts are alleged from which intent can be inferred. Otherwise, discovery is a costly fishing expedition based on nothing more than conjecture. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1418 (3rd Cir. 1997) (Alito, J.).

At times, Plaintiff acknowledges the Supreme Court's decisions in *Twombly* and *Iqbal*, but ignores their holdings. Plaintiff argues these cases merely require a complaint to provide "notice" of a claim, proceeding to argue that its conclusory allegations of intent do just that. *See, e.g.*, Response at p. 10 (citing the allegation "Cisco intentionally marked its products with the expired patents for the purposes of hindering competition and deceiving the public.") He ignores, however, that *Iqbal* and *Twombly* require notice to be provided by factual allegations that are not simply conclusions, conjecture, or a bare recitation of the required elements of the claim. *Twombly*, 550 U.S. at 555. In fact, *Iqbal* holds that conclusory allegations, such as those presented by Plaintiff, should be ignored when considering the sufficiency of the complaint. *Iqbal*, 129 S.Ct. at 1951.

Even more problematic for Plaintiff is that the intent element of his false marking claim must meet not only the lower standard of Rule 8 set out in *Iqbal* and *Twombly* by pleading facts as opposed to conclusions, but it also must satisfy the heightened pleading requirement of Rule 9(b). *See, e.g., Juniper Networks v. Shipley*, No. C 09-0696, 2009 WL 1381873 at *4 (N.D. Cal. May 14, 2009); *see also, Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (Federal Circuit followed the lead of the Seventh Circuit and applied Rule 9(b) to the intent to deceive element of an inequitable conduct claim). Once the conclusions and verbatim recitations of the legal elements of a false marking claim are stripped away, no facts (much less the specific facts of intent required by Rule 9(b)) remain from which an inference of Cisco's intent to deceive competitors can be drawn.

Actually, the only facts Plaintiff alleged regarding intent support a contrary inference. Plaintiff alleges throughout his Complaint and references repeatedly in his

2

Response that Cisco marked the identified product with 7 expired patents among 34 total on the label. *See, e.g.,* Response at 8. As Cisco explained in its Motion to Dismiss, even if true, these allegations standing alone cannot support an inference of intent to deceive competitors into erroneously believing the identified set top boxes were protected by patents, because there are no other facts alleged indicating Cisco believed that other set top box manufacturers would be deceived by the inclusion of these 7 patents on the label.

Rather than address Cisco's point regarding the reasonable inferences from this allegation, Plaintiff incorrectly asserts that Cisco is arguing in its Motion that false marking can never result from marking a product with some patents that cover the product, even if other patents also marked on the product are expired. *Id.* at 8-10. Even though some courts have determined that a false marking claim cannot result from marking a product with expired patents,[1] that is not the argument relied upon by Cisco in its Motion and is one to be visited another day if the need should arise. Instead, the point raised in the Motion is that Plaintiff's Complaint fails because under the few facts he actually alleged, no intent to deceive can be inferred.

Plaintiff also asserts that he has standing to bring this lawsuit, even though he admits that he has suffered no injury-in-fact. Response at 6-7. Plaintiff argues that no injury to the Plaintiff is required to bring a *qui tam* action, which he claims are designed to redress injuries to the public or the "United States." Response at 5-7. But, Plaintiff fails to allege an injury to these entities either. General allegations of a failure to comply with the law does not constitute an injury in fact to the United States. *See, e.g., Lance v. Coffman,* 549 U.S. 437, 442 (2007); *FEC v. Akins,* 524 U.S. 11, 24 (1998); *Lujan v.*

---

[1] *See Arcadia Machine & Tool Inc. v. Sturm, Ruger & Co.,* 786 F.2d 1124, 1125 (Fed. Cir. 1986).

*Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992). And, Plaintiff alleges no facts establishing that any members of the relevant public (*i.e.,* those seeking to make set top boxes) have been deterred from competing with Cisco as a result of the alleged false marking. Essentially then, Plaintiff is attempting to use the court system to redress an injury that its allegations fail to establish has occurred.

## II. ARGUMENT

### A. Plaintiff Disregards Controlling Precedent

Plaintiff's discussion of *Twombly* and *Iqbal* is cursory. Given the central focus of these cases in Cisco's Motion, his cursory treatment of these decisions is surprising. Perhaps Plaintiff's limited treatment of these decisions is an attempt to shift the argument to one he feels he is better able to win.

Despite Plaintiff's attempts at diversion, *Twombly* and *Iqbal* remain dispositive. Both establish that allegations of mere labels and conclusions like those in Plaintiff's complaint do not provide a basis to entertain his claim for relief, even under the least stringent pleading standards. *Twombly*, 550 U.S. at 555. Such allegations "are not entitled to the assumption of truth," and should be ignored. *Iqbal*, 129 S.Ct. at 1950.

Plaintiff's allegations that Cisco is a "sophisticated company" that it "knows or should know ... that the Expired Patents marked on its products have expired" and that it "intentionally marked its products with the Expired Patents in an attempt to prevent competitors from entering the market," are the only allegations regarding Plaintiff's claims that Cisco acted with intent to deceive competitors. Complaint at 5-6. These allegations are not factual, but are simply legal conclusions and recitals of the legal requirements of the false marking claim. Consequently, they should be ignored when determining the sufficiency of the complaint. *Iqbal*, 129 S.Ct. at 1950. Indeed, as

4

demonstrated in Cisco's Motion,[2] another court rejected substantively identical allegations in a recent false marking case. *Brinkmeier v. Graco Children's Products, Inc.*, ___ F. Supp. 2d ___, 2010 WL 545896 (D. Del. Feb. 16, 2010). Plaintiff does not dispute Cisco's discussion of *Brinkmeier* in its Reponse. Rather, he argues that *Brinkmeier* should not be followed because there was one claim that alleged additional facts that was not dismissed, and because it is not controlling authority. Response at 14.

Plaintiff's attempt to distinguish *Brinkmeier* because the court sustained one claim containing additional factual allegations fails. The reason is simple: the additional facts plead by Brinkmeier regarding the surviving claim are not plead here. Plaintiff contends that the court in *Brinkmeier* "relied on an allegation that the defendant had marked its product subsequent to expiration of the patents" to sustain the one false marking claim it did not dismiss. *Id.* at 14. Plaintiff's explanation of the basis for sustaining the one claim in *Brinkmeier* is not only wrong, it makes no sense. If the additional allegation relied on by the court was simply that the defendant marked its products with the patent numbers after the patents expired, such an allegation would be present in every false marking case that includes an allegation regarding expired patents, because if the defendant marked the product with the patent numbers before the patents expired, there would be no false marking at all. *See, e.g., Keystone Mfg. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 566 (W.D.N.Y. 2005) (holding that written statements that a product was protected by patent, when the patent was not expired at the time the statement was made, could not give rise to liability under § 292). At most, the duty to accurately mark arises only when the product is actually marked. It would defy logic to conclude that a manufacturer has an

---

[2] Dkt. 19 at 9-10.

obligation to go out to customers and reclaim (or remark) products in the field to remove patent numbers after such patents expire, and Plaintiff has cited no authority indicating such a duty. Therefore, his claim that the court in *Brinkmeier* sustained the one surviving claim because of an allegation that the defendant marked the product with the patent numbers after such patents expired is incorrect.

Instead, the court in *Brinkmeier* relied on factual allegations regarding the sustained claim not present here: (1) that the defendant previously had been sued by two competitors for infringing the expired patent at issue, and (2) because the defendant revised its patent markings at least three times since the expiration of the subject patent. *Brinkmeier*, 2010 WL 455896 at *4. Here, Plaintiff's complaint does not contain any allegations similar to those in the claim that was sustained in *Brinkmeier*. Rather, the allegations that Plaintiff makes are identical in substance (if not also form) to those dismissed by the court in *Brinkmeier*. *See*, Cisco's Motion at 10.

Plaintiff argues further that this Court should ignore *Brinkmeier*, because *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009) is controlling and runs contrary to *Brinkmeier*. Response at 14. He is incorrect on this point as well. *Lusby* is completely consistent with *Brinkmeier*. The court in *Lusby* did not sustain the claim because it applied a different standard to the intent requirements of the claim than the court in *Brinkmeier*. Instead, the court in *Lusby* sustained the claim because the facts plead by the plaintiff in *Lusby* on which an intent to deceive was inferred were very different from the scant facts alleged in *Brinkmeier* regarding intent (mirroring the allegations of Plaintiff here). *Compare, Lusby,* 570 F.3d at 853-54 *with, Brinkmeier,* 2010 WL 545896 at *4-*5.

In the realtor's *qui tam* complaint concerning false product claims in *Lusby*, the relator alleged, on personal knowledge, that the parts Rolls-Royce manufactured for the government did not meet particular specifications, and also described the tests that proved such deficiency. *Id.* at 853. In addition, the relator alleged that Rolls-Royce knew that the manufactured parts were non-compliant because the relator told his supervisors at Rolls-Royce about the failed tests. *Id* at 853-54. Finally, the relator also alleged that Rolls-Royce's own design and quality assurance audits confirmed the failed tests and deficient parts. *Id.* at 853-54. Plaintiff's complaint here contains no factual allegations even remotely similar to those relied on by the court to infer intent to defraud in *Lusby*. Accordingly, *Lusby* does not contradict *Brinkmeier*, and this Court should reach the same conclusion as the court in *Brinkmeier*.

In addition to ignoring the facts alleged in *Lusby*, Plaintiff misrepresents the legal test applied by the court in *Lusby* to determine the sufficiency of the allegations. Plaintiff asserts that all he must do under Seventh Circuit law to state a claim with an intent requirement is to plead the "who, what, when, where and how" of the alleged fraud. Response at 12-13. Although the court in *Lusby* applied a "who, what, when, where and how" framework to consider the sufficiency of the relator's allegations, the court's analysis included a consideration of the facts alleged in the complaint that supported the intent requirement of the fraud claim. *Lusby*, 570 F.3d at 853-54. As the discussion above illustrates, there were ample facts alleged from which intent to defraud could be inferred. Accordingly, the framework applied by the court in *Lusby* does not relax or eliminate the requirement to plead specific facts from which an intent to deceive can be inferred. Rather, the framework underscores that requirement. *Id.* at 854-55.

Conspicuously absent from Simonian's analysis of the "who, what, when, where and how" in its Response is any reference to facts alleged in the Complaint regarding Cisco's intent to deceive. Instead, all of Plaintiff's answers to the five questions are limited to allegations that false marking occurred. False marking without an intent to deceive is not actionable under §292. *See, e.g., Clontech Lab., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1351 (Fed. Cir. 2005). None of Plaintiff's answers to his self-constructed newspaper questions even attempt to address an alleged intent to deceive. Response at 12-13.

Moreover, Plaintiff's argument that his pleading satisfies the "who, what, when, where and how" test used as a framework by the court in *Lusby* with respect to the intent to deceive element of its claim ignores recent Federal Circuit precedent directly on point. In *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), the Federal Circuit used the "who, what, when, where and how" framework while considering the sufficiency of a pleading alleging an inequitable conduct claim with an "intent to deceive" element. *Id.* at 1327. The court considered whether bare allegations of "intent to deceive" based on "information and belief" satisfied the pleading requirements of Rule 9(b)[3] and determined that conclusory assertions of intent based on "information and belief" without allegations concerning the facts upon which the information and belief is based do not satisfy the requirements of Rule 9(b). *Id.* at 1330-31. Plaintiff's allegations of intent to deceive are the same conclusory allegations based on "information and

---

[3] At least for the purpose of opposing Cisco's Motion, Simonian concedes that Rule 9(b) governs the pleading requirements for the intent to deceive element of its false marking claim. Response at 11, n. 4. Other courts have also confirmed Rule 9(b) governs the pleading requirements for such claims. *See, e.g., Juniper Networks v. Shipley*, No. C 09-0696, 2009 WL 1381873 at *4 (N.D. Cal. May 14, 2009) ("The false marking statute is a fraud-based claim, which is subject to the pleading requirements of Federal Rule of Civil Procedure 9(b)....") (citation omitted)

belief" without any allegations of the facts upon which such information and belief is based that the court rejected in *Exergen*. *See* Complaint at ¶¶ 17, 19, 20 and 22. Thus, as the Federal Circuit determined in *Exergen* (where it explicitly followed the law of the Seventh Circuit concerning the sufficiency of pleadings regarding intent), the "who, what, when, where and how" framework applied by the Seventh Circuit in *Lusby* does not relieve Plaintiff of his obligation to plead specific facts from which an intent to deceive can be inferred. *Exergen*, 575 F.3d at 1327.

### B. Plaintiff's Claims to Discovery Regarding Intent are Misplaced

Despite his failure to plead facts establishing an intent to deceive, Plaintiff urges this Court to allow his claim to proceed to discovery because he claims certain information is uniquely within Cisco's control. Response at 11. Such an argument has been repeatedly rejected by the courts. The court in *Exergen*, for example, recognized that certain information regarding intent may be within the opposing party's control, but that reality did not relieve a claimant from pleading facts from which an intent to deceive can be inferred before discovery could proceed. *Exergen*, 575 F.3d at 1330-31.

Similarly, the plaintiff in *Iqbal* brought a claim alleging a violation of his constitutional rights through policies of racial discrimination in the aftermath of the 9/11 attacks. *Iqbal*, 129 S.Ct. 1937, 1951-52. That claim required factual allegations from which a "discriminatory state of mind" could be inferred. *Id.* at 1952. The plaintiff argued that he should be entitled to limited discovery into the defendants' intent because such information was uniquely within defendants' control. *Id.* at 1953-54. The Supreme Court declined and held that discovery cannot proceed on a claim requiring proof of intent before specific facts are alleged from which intent can be inferred. *Id.* at 1954-55.

9

Plaintiff should similarly be barred from using discovery as a fishing expedition to find a claim he cannot plead. The court is the gatekeeper ensuring the required factual pleading specificity before the costly discovery process can begin. *See, e.g., Twombly*, 550 U.S. at 558-59; *Iqbal*, 129 S.Ct. at 1954 (because complaint did not comply with pleading rules, plaintiff was "not entitled to discovery, cabined or otherwise."); *see also Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1040 (N.D. Ill. 2007) ("Rule 9(b) has the practical effect of performing a gate keeping function as to [fraud-based] claims.").

### C. Plaintiff Lacks Standing To Assert This Claim

Plaintiff's argument that he has standing to assert this claim is based primarily on his claim that there is a "strong Federal Circuit holding in favor of *qui tam* litigation under Section 292." Response at 7 n.1. Plaintiff ignores that each of the cases he cites for this proposition involved lawsuits alleging a competitive injury in fact. *See Clontech Labs., Inc. v. Invitrogen Corp.*, 263 F. Supp. 2d 780, 783-84 (D. Del. 2003) (noting that the parties competed in genomics and molecular biology field); *The Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295, 1303 ("The more articles that are falsely marked the greater the chance that competitors will see the falsely marked article and be deterred from competing."). Plaintiff has not alleged that he is a competitor who has been deterred from making competitive set top boxes, nor has he alleged any facts supporting an inference that any member of the competitive public has been deterred from such activity. Therefore, unlike the plaintiffs in *Clontech* and *Forest Group*, Plaintiff has failed to allege injury to himself or any other member of the relevant public.[4]

---

[4] Moreover, neither *Clontech* nor *Forest Group* addressed whether the plaintiff had standing to bring the suit. Accordingly, contrary to Simonian's argument, the Federal Circuit has not squarely addressed the issue of whether an individual who has not suffered any competitive harm has standing to sue under section 292.

Plaintiff also argues that the answer to the standing question—which he frames as whether the United States has suffered injury—is "provided by the United States itself." Response at 7. Plaintiff then proceeds to rely upon an Amicus Brief, filed by the Civil Division of the United States Department of Justice in *Stauffer v. Brooks Bros., Inc.*,[5] as though such a brief was controlling law. The Department of Justice is an office of the executive branch, and the Amicus Brief filed in the Federal Circuit is not law. This Court should reject Plaintiff's attempt to bypass the judiciary, and instead rely on the cases actually addressing the standing issue.

Where a complaint alleges only a generalized failure to comply with the laws, such an allegation fails to rise to the level of a concrete injury in fact sufficient to establish standing. *See Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248, 254 n.5 (S.D.N.Y. 2009) ("the Court doubts that Government's interest in seeing its laws enforced could alone be an assignable, concrete injury in fact sufficient to establish a *qui tam* plaintiff's standing") (citing *FEC v. Akins*, 524 U.S. 11, 24 (1998)). In *Stauffer*, the plaintiff's allegations purporting to allege an injury in fact were that "defendants' conduct has 'wrongfully quelled competition with respect to such bow tie products thereby causing harm to the economy of the United States,'" and that "by 'wrongfully and illegally advertis[ing] patent monopolies that they do not possess' defendants have 'benefitted in at least maintaining their considerable market share . . . in the high-end haberdashery marketplace.'" *Id.* at 255. The court held that such allegations failed to allege the required injury to confer standing. *Id.*

---

[5] Federal Circuit Case Nos. 2009-1428, -1430, -1453.

Like the plaintiff in *Stauffer*, Plaintiff's allegations of harm are generalized claims of wrongdoing by Cisco. *See, e.g.,* Complaint at ¶¶ 20-24. For example, without providing any supporting facts, Plaintiff alleges that "each false marking on the Defendant's products is likely to, or at least has the potential to, discourage or deter persons and companies from commercializing competing products." Complaint at ¶ 21. Allegations like this one, which amount to an allegation that "some competitor might somehow be injured at some point, or that some component of the United States economy might suffer some harm through defendants' conduct, [are] purely speculative and plainly insufficient to support standing." *Stauffer*, 615 F. Supp at 255. Plaintiff's other allegations of harm, that Cisco has "wrongfully and illegally advertised patent rights which it does not possess, and, as a result has benefitted commercially and financially," (¶ 22) and that "each expired patent which is marked on a product contributes to causing harm to the Plaintiff, the United States, and the general public" (¶ 24) are the same, in substance, as those rejected in *Stauffer*.[6] When Plaintiff's Complaint is stripped of the conclusory and speculative allegations of harm, the only "injury" to the United States that he alleges is a generalized allegation that Cisco's marking on the set top boxes at issue fails to comply with United States law. Such allegations fail to rise to the level of a concrete and particularized injury in fact, and Plaintiff therefore lacks standing. *See, e.g., Lujan*, 504 U.S. at 560 (holding that an injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical").

---

[6] Moreover, these allegations are not supported by any allegations of fact, and are conclusory allegations properly ignored under *Iqbal. See Iqbal*, 129 S.Ct. at 1951.

III. **CONCLUSION**

For the reasons stated herein, as well as in Cisco's Memorandum in Support of its Motion to Dismiss (Dkt. 19), this Court should find that Plaintiff failed to and cannot allege any intent to deceive sufficient to state a claim for relief, and failed to and cannot allege any injury-in-fact to support Article III standing. This Court should therefore grant Cisco's Motion to Dismiss, and dismiss Plaintiff's Complaint with prejudice.

DATED: April 30, 2010

/s/ David A. Nelson
David A. Nelson (IL Bar No. 6209623)
davenelson@quinnemanuel.com
Michael F. Harte (IL Bar No. 6272364)
mikeharte@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison, Suite 2450
Chicago, IL 60611
Tel: (312) 705-7400
Fax: (312) 705-7401

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April 2010, I electronically filed the foregoing DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) with the Clerk of Court by using the CM/ECF System, which will send a notice of electronic filing to Plaintiff's attorneys of record.

/s/ David A. Nelson
David A. Nelson

SERVICE LIST
Case No. 10-cv-1306 (Der-Yeghiayan)

Joseph M. Vanek
jvanek@vaneklaw.com
David P. Germaine
dgermain@vaneklaw.com
Vanek, Vickers & Masini, P.C.
225 W. Washington, 18th Floor
Chicago, IL 60606
312-224-1500

Martin Goering
mgoering@emcpc.com
Jessica E. Rissman
jrissman@emcpc.com
Law Offices of Eugene M. Cummings, P.C.
1 N. Wacker, Suite 4130
Chicago, IL 60606
312-984-0144

Robert D. Cheifetz
robc@sperling-law.com
Bruce S. Sperling
bss@sperling-law.com
Sperling & Slater
55 W. Monroe St., Suite 3200
Chicago, IL 60603
312-641-3200