**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS A. SIMONIAN, | ] | |
| | ] | |
| Relator, | ] | 10 C 1306 |
| v. | ] | |
| | ] | Judge Samuel Der-Yeghiayan |
| CISCO SYSTEMS, INC., | ] | |
| | ] | |
| Defendant. | ] | |

**Relator's Motion for Leave to File Amended Complaint**

Thomas A. Simonian, as *qui tam* relator on behalf of the United States of America

("Relator"), respectfully moves this Court for leave to file an amended complaint that cures the

pleading deficiency identified by the Court in its Memorandum Opinion and Order of June 17,

2010.  In support of his motion, the Relator states as follows:

1.      In its Memorandum and Opinion of June 17, 2010 ("Opinion"), the Court stated

in pertinent part as follows:

> Where a party making a misrepresentation has knowledge of the
> misrepresentation, intent to deceive can be inferred.  *Clontech Labs, Inc. v.*
> *Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005).  Simonian has alleged
> that "upon information and belief" Cisco is "a sophisticated company and has
> many decades of experience applying for, obtaining, and/or litigating patents."
> (Compl. Par. 17).  Simonian has not alleged any specific facts upon which he
> bases this allegation. In addition, all of Simonian's other allegations related to
> Cisco's knowledge and "intent to deceive" not only flow from there, but are also
> based upon information and belief unsupported by specific facts. (Compl. Par. 18-
> 20). Thus, Simonian has failed to plead specific facts showing Cisco's knowledge
> of the mismarking or its intent to deceive the public.

Opinion, p. 8.

> If Simonian can cure the deficiency in his complaint, Simonian may file a motion
> for leave to file an amended complaint by July 1, 2010.

Opinion, p. 10.

2.      Attached as **Exhibit A** is Relator's First Amended Complaint ("FAC"), which

cures the deficiency identified by the Court.  The Relator pleads specific facts that support the

allegation that Cisco falsely marked its product for the purpose of deceiving the public.  In

particular, the Relator alleges that Cisco mismarked its product with expired patents with the

knowledge that these patents had expired.  Having so alleged, a "rebuttable presumption" arises

that Cisco placed the expired patents on the product for the purpose of deceiving the public.

*Pequignot v. Solo Cup*, 2010 WL 2346649, *6 (Fed. Cir. June 10, 2010) (**Exhibit B** hereto).

      3.     The Relator pleads the following specific facts that support his allegation that

Cisco had knowledge of the mismarking alleged in the FAC (and as depicted in the photographs

therein):

- Cisco is a sophisticated company and has decades of experience applying for, obtaining, and/or litigating patents.   According to a 2010 posting on Cisco's website, "in 2001, Cisco secured 163 patents, but fueled by an investment in R&D that has been above 10% of company revenues for a decade, that number increased to 913 in the past year."  In March 2009, Cisco reported that it holds "more than 2,500 issued patents, with active applications for more than 4,000 others."  (FAC ¶17).

- The "ribbon copy" of each of those 2500 patents issued to Cisco came with: (a) a specific statement from the Patent Office that the issued patent will expire; and (b) instructions  to calculate that expiration date pursuant to statute. (FAC ¶17).

- According to the 10-K it filed on or about September 11, 2009, Cisco has "a program to file applications for and obtain patents…."   (FAC ¶17).

- In a 2003 interview (posted on Cisco's website), Robert Barr, Cisco's vice

president of intellectual property and worldwide patent counsel explained that in 1994 "Cisco launched Cisco Patents Online (CPOL), an automated, Web-based system that manages and tracks initial idea submission, internal review, and the progress of the patent application through the U.S. Patent Office.  CPOL represents the latest patent process management technology and was a collaborative development effort between the ITD Engineering Information Framework group and the legal patent team."  In 2005, Mr. Barr departed Cisco to become executive director of Boalt Hall School of Law's Berkeley Center for Law & Technology.  He was replaced by Mallun Yen, who was promoted from within Cisco's IP counsel staff.  Ms. Yen enlarged Cisco's internal IP legal counsel staff to over two dozen "industry professionals." (FAC ¶17).

- Cisco has a team of sophisticated lawyers who manage its patent portfolio, prosecute patent applications, litigate infringement disputes, and work as "innovation managers" side-by-side with engineers.  Cisco's Mark Chandler, who has the titles of "Senior Vice president, General Counsel, and Secretary," has testified before Congress concerning proposed revisions to the Patent Act.  Mr. Chandler supervises a staff of 250 persons.  According to a speech Mr. Chandler gave in 2007, Cisco's legal department was then spending millions of dollars internally, and some $80 million on outside counsel.  (FAC ¶18).

- Cisco has been involved as both plaintiff and defendant in patent litigation. In *Telecordia Technologies, Inc. v. Cisco Systems, Inc.*, 592 F.Supp.2d 727, 746 fn. 7 (D. Del. 2009), the subject of a patent's expiration was specifically at issue, and

Cisco had submitted an expert opinion concerning a license based upon the expiration date of one of the patents at issue in that case. *Id.*, Cisco Brief, 2007 WL 6211237   ("He told the jury that: '[M]y damage period goes further than Mr. Nawrocki's, since I am doing a paid-up, [Cisco has] to pay all the way through when the patent expires.'").  (FAC ¶18).

- Cisco, as the owner of its intellectual property, knows its legal status.  In particular, Cisco presumptively knows that the Expired Patents marked on its products have expired and/or do not cover the products to which the marking is affixed.  In this regard, the photo shown in paragraph 13 of the FAC reflects the fact that Cisco marked its IPST box with patent No. 7,050,698 (the '698).  Because the '698 patent did not issue until May 23, 2006, it could not have been marked on the IPST box patent information label before that date.  As of May 23, 2006, however, the '169 and '919 patents marked on that label (and depicted in paragraph 13) had already expired.  Nonetheless, at some time subsequent to May 22, 2006, Cisco: (a) added the '698 newly-issued patent to the product marking label; (b) did not remove the expired '169 patent from the marking label; and (c) did not remove the '919 patent from the marking label.  Cisco has no legitimate business reason that would explain its decision not to remove the expired patents from its product; for example, it did not falsely mark its product in order to reduce costs or to avoid business disruption (because it was making a change to the marking label in any event to add the '698 patent).  And, as of the October 2009 manufacture date (depicted in the photo in paragraph 13), the following patents

4

marked thereon had already expired: the '169 Patent, the '919 Patent, the '456

Patent, the '498 Patent, the '011 Patent, the '384 Patent, and the '071 Patent.

Cisco likewise had no legitimate business reason (e.g., meaningful reduction of

costs or avoidance of business disruption) that would explain its decision not to

remove these from its marking label either.   (FAC ¶19).

    4.    Having alleged both mismarking with expired patents and knowledge of the

patents' expiration, Mr. Simonian has properly pled a false marking claim that both satisfies

Rule 9(b) and is "plausible" under *Iqbal* and *Twombly*.   In light of the Federal Circuit's recent

opinion in *Solo Cup*, Judge Solis recently discussed the standard for pleading false marking

claims:

> At the pleadings stage – viewing all facts in the light most favorable to the
> plaintiff – allegations that a defendant knowingly mismarked an article with an
> expired patent (*i.e.* a false statement with knowledge) allows a court to infer
> intent to deceive the public. [Citing the Federal Circuit's *Solo Cup* opinion].

*Patent Compliance Group, Inc. v. Interdesign, Inc.*, No. 3:10-CV-0404-P, Order at 18 (N.D. Tex.

June 28, 2010) (**Exhibit C** hereto).  Indeed, in light of *Solo Cup*, Judge Solis rejected the

*Brinkmeier* case relied upon by the defendant – and relied upon heavily by Cisco here:

> Defendant relies on *Brinkmeier* and asserts that the mere presence of products
> with expired patent labels in the stream of commerce does not create an inference
> of deceptive intent. ... While *Brinkmeier* declined to draw an inference of
> deceptive intent from pleadings that the defendant knowingly marked certain
> articles with an expired patent number, this ruling departs from *Clontech* and
> subsequent Federal Circuit case law.  *See Clontech Labs*, 406 F.3d at 1352-53;
> *Pequignot v. Solo Cup Co*, [2010 WL 2346649, * 6] (Fed. Cir. June 10, 2010)
> (**"[T]he combination of a false statement and knowledge that the statement
> was false creates a rebuttable presumption of intent to deceive the public"**).

*Patent Compliance Group*, Order at 17-18 (emphasis added).[1]

5.    Judge Shadur recently granted Mr. Simonian (the Relator herein) leave to file an amended complaint that similarly relies on the rebuttable presumption of an intent to deceive that arises from the pleading of a false marking and knowledge that the patents at issue had expired. A copy of that First Amended Complaint and Judge Shadur's Orders in that regard are attached hereto as **Group Exhibit D**.  As this Court can see: (a) Judge Shadur denied defendant's motion to dismiss and later granted Mr. Simonian's voluntary motion for leave to amend his complaint (for organizational reasons) but directed Mr. Simonian to clarify, in light of *Solo Cup*, that his allegations concerning defendant's intent to deceive were based on the "rebuttable presumption" referenced in that *Solo Cup* case; and (b) the facts alleged in the First Amended Complaint against *Merck* – which Judge Shadur himself took a role in revising (as the Order of June 28 reflects) – are far less extensive than those alleged against Cisco in Exhibit A hereto.

6.    Rule 15 provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed.R.Civ.P. 15(a)(2).  Here, the Relator has corrected the deficiency in the complaint identified by the Court, within the time period set by the Court for doing so. Accordingly, the Relator respectfully requests that, in the interests of justice, this Court allow him to pursue a claim for false marking against Cisco on behalf of the United States, a *qui tam* claim that has been specifically encouraged  by both Congress and the Federal Circuit:

> Rather than discourage such activities, the false marking statute explicitly permits *qui tam* actions.  By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.  The fact

---

[1]Once this rebuttable presumption arises, the defendant then has the burden of proof to show (at trial or on summary judgment) "by a preponderance of the evidence that it did not have the requisite purpose to deceive." *Solo Cup*, 2010 WL 2346649 at *7.

that the statute provides for *qui tam* actions further supports the per article construction. Penalizing false marking on a per decision basis would not provide sufficient financial motivation for plaintiffs – who would share in the penalty – to bring suit.

*The Forest Group v. Bon Tool*, 590 F.3d 1295, 1303-4 (Fed. Cir. 2009); 35 U.S.C. §292 ("... Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or numbering importing that the same is patented, for the purpose of deceiving the public ... shall be fined ...  Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.")

WHEREFORE, for the foregoing reasons, the Relator, Thomas A. Simonian, respectfully requests that this Honorable Court grant him leave to file the First Amended Complaint that is attached hereto as Exhibit A, and grant him such other and further relief as the Court deems just and proper.

Respectfully submitted,

THOMAS A. SIMONIAN, as Relator

By___/s Robert D. Cheifetz_____
   One of his attorneys

Bruce S. Sperling
Robert D. Cheifetz
Sperling & Slater, P.C.
55 W. Monroe, Suite 3200
Chicago, Illinois 60603
(312) 641-3200

Joseph M. Vanek                     Eugene M. Cummings
Vanek, Vickers & Masini             Eugene M. Cummings, P.C.
111 S. Wacker Drive, Suite 4050     One North Wacker Drive, Suite 4130
Chicago, Illinois 60606             Chicago, Illinois 60606